ERIC GRANT
United States Attorney
MATTHEW THUESEN
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

MARGARET A. MOESER
Chief, Money Laundering, Narcotics and Forfeiture Section
Criminal Division, U.S. Department of Justice
KATHERINE NIELSEN
KEVIN G. MOSLEY
EMILY COHEN
CAYLEE CAMPBELL
Trial Attorneys
1400 New York Ave NW
Washington, D.C. 20005
Telephone: (202) 514-1263

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:25-cr-235 JAM |
| Plaintiff, | SENTENCING MEMORANDUM |
| v. | DATE: February 10, 2026<br>TIME: 9:00 a.m.<br>COURT: Hon. John A. Mendez |
| PAXFUL HOLDINGS, INC., | |
| Defendant. | |

In advance of the sentencing hearing in this matter set for February 10, 2026, the United States respectfully submits the additional information contained herein for the Court's consideration.

I. **PROCEDURAL HISTORY**

On October 8, 2025, the United States filed an Information charging Paxful Holdings, Inc. ("Paxful"), with one count of conspiracy to willfully fail to maintain an effective anti-money laundering ("AML") program, in violation of 18 U.S.C. § 371, one count of conspiracy to operate an unlicensed

money transmitting business, in violation of 18 U.S.C. § 371, and one count of conspiracy to violate the Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises Act, in violation of 18 U.S.C. § 371.[1]  ECF No. 1.

On December 8, 2025, the Honorable Chi Soo Kim, United States Magistrate Judge, arraigned Paxful on the Information and the defendant waived indictment.  ECF Nos. 19, 21.  On December 9, 2025, Paxful pleaded guilty before this Court to the Information pursuant to a written plea agreement ("Plea Agreement") under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure that requires Paxful, among other obligations, to plead guilty to all three counts, pay a criminal penalty of $4,000,000, pay a mandatory special assessment of $400 per count, and serve a two-year term of probation.  *See* ECF Nos. 18, 22. Pursuant to paragraph 28 of the Plea Agreement, the Court waived the preparation of a Pre-Sentence Investigation Report and adjourned for sentencing on February 10, 2026.  ECF No. 22.

During the change of plea hearing, this Court raised certain questions, including about the criminal penalty described in the Plea Agreement.  The government provides here additional information regarding the factors it considered in establishing the criminal penalty and assessing Paxful's ability to pay that penalty.

## II. APPLICABLE LAW, GUIDELINES AND POLICY

Title 18, United States Code, Section 3572(a) requires courts to consider a number of factors when deciding whether to impose a criminal fine, how much to impose, and the payment method.  These considerations include: (1) the defendant's financial resources; (2) the burden the fine will impose upon the defendant and any financial dependents; (3) pecuniary loss inflicted on others as a result of the offense; (4) the amount of restitution; (5) the need to deprive the defendant of illegally obtained gains from the offense; (6) the expected costs to the government; (7) whether the defendant can pass the fine on to consumers or other persons; and (8) if the defendant is an organization, the size of the organization

---

[1] PXF Global Corp. ("PXF Global"), a Panama corporation, which is not a defendant in this matter, purchased the defendant's assets outside of the U.S. pursuant to a 2024 agreement.  That agreement subjects PXF Global to certain terms and obligations under the Plea Agreement, to which PXF Global, through Roshan Dharia, the CEO of both Paxful Holdings, Inc. and PXF Global, has agreed, as indicated in the Plea Agreement.  *See* ECF No. 18 at 5-6 and Approvals and Signatures B.  Dharia was not affiliated with either company during the commission of the charged offenses, which occurred between July 2015 and December 2022.  Dharia was hired by a court-appointed custodian of Paxful in 2023.

1  and any measure taken to discipline any officer, director, employee, or agent of the organization
2  responsible for the offense and to prevent a recurrence of such an offense.
3       United States Sentencing Guidelines Section 8C2.2(b) instructs that "[w]here it is readily
4  ascertainable . . . that the organization cannot and is not likely to become able . . . to pay [the] minimum
5  guideline fine, . . . . the court may impose the fine that would result from the application of § 8C3.3
6  (Reduction of Fine Based on Inability to Pay)." Section 8C3.3(b) advises courts that they may reduce a
7  criminal fine amount below the prescribed Guidelines range where "the organization is not able and,
8  even with the use of a reasonable installment schedule, is not likely to become able to pay the minimum
9  fine required by § 8C2.7 (Guideline Fine Range — Organizations) and § 8C2.9 (Disgorgement)."
10  U.S.S.G. § 8C3.3(b). This advisory provision is qualified by the condition that "the reduction under this
11  subsection shall not be more than necessary to avoid substantially jeopardizing the continued viability of
12  the organization." U.S.S.G. § 8C3.3.
13       In seeking to resolve a criminal case with a business organization, including establishing an
14  appropriate criminal penalty, the government is required to consider both the United States Sentencing
15  Guidelines and the factors outlined in the Department of Justice's Corporate Enforcement and Voluntary
16  Self-Disclosure Policy ("CEP"), available at https://www.justice.gov/criminal/media/1400031/dl?inline.
17  If a defendant corporation asserts that it is unable to pay the criminal fine or monetary penalty
18  established by the Guidelines and application of the CEP, despite agreeing that the proposed amount is
19  otherwise appropriate based on the law and the facts, the government will independently assess the
20  corporate defendant's claim, taking into consideration 18 U.S.C. § 3572 and U.S.S.G. §§ 8C2.2 and
21  8C3.3. *See* Memorandum for All Criminal Division Personnel: "Evaluating a Business Organization's
22  Inability to Pay a Criminal Fine or Criminal Monetary Penalty," from Assistant Attorney General Brian
23  A. Benczkowski, October 8, 2019, available at
24  https://www.justice.gov/opa/speech/file/1207576/download ("Inability to Pay Memo" or "the Memo").
25       Courts have recently accepted reduced criminal penalties stipulated by Rule 11(c)(1)(C) plea
26  agreements resulting from inability of corporate defendants to pay. In the Southern District of Alabama,
27  the court imposed a penalty of $24 million on Austal USA, LLC, despite the $73.6 million penalty
28  prescribed by the Guidelines and the application of credit under the CEP, due to the company's inability

SENTENCING MEMORANDUM      3

to pay.  *See United States v. Austal USA, LLC*, No. 24-cr-131-JB, ECF No. 15 (S.D.A.L. Aug. 26, 2024); Press Release, U.S. Dep't of Justice, U.S. Navy Shipbuilder Pleads Guilty to Financial Accounting Fraud Scheme and Obstructing a Defense Department Audit (Aug. 27, 2024), https://www.justice.gov/archives/opa/pr/us-navy-shipbuilder-pleads-guilty-financial-accounting-fraud-scheme-and-obstructing-defense.  In 2023, a court in the Eastern District of Michigan imposed a $27.2 million penalty on Sterling Bancorp, Inc. as part of a securities fraud plea, finding the defendant unable to pay the $62 million penalty assessed pursuant to the Guidelines and the CEP.  *See* Press Release, U.S. Dep't of Justice, Sterling Bancorp, Inc. to Plead Guilty to $69M Securities Fraud (March 15, 2023), https://www.justice.gov/archives/opa/pr/sterling-bancorp-inc-plead-guilty-69m-securities-fraud.  In the Eastern District of New York, the court imposed a $16.6 million penalty on Sergeant Marine, Inc. in a foreign bribery case where the defendant was determined unable to pay the $90 million penalty prescribed by the Guidelines and the CEP.  *See United States v. Sergeant Marine, Inc.,* No. 20-cr-00363-ENV, ECF No. 13 (E.D.N.Y. Oct. 14, 2020).

### III.   APPLICATION TO THIS MATTER

    a.  <u>Reduced Penalty for Cooperation and Remediation is Appropriate Under the Guidelines and CEP.</u>

The criminal penalty outlined in the Plea Agreement was determined pursuant to the Guidelines and CEP.  Within this framework, the government considered that Paxful had no criminal history and no prior regulatory actions in the United States.  Paxful received credit for its cooperation with the government's investigation pursuant to U.S.S.G. § 8C2.5(g)(2) because it cooperated with the investigation and demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct.  *See* ECF No. 18 at 7 & 25.  Paxful also received credit pursuant to the CEP for its cooperation by, among other things: (i) promptly collecting, analyzing, and organizing voluminous information at the request of the government; (ii) providing timely updates on facts learned during its internal investigation related to conduct described in the Statements of Facts; and (iii) making detailed factual presentations to the government.  *See* ECF No. 18 at 7 & 26.  Paxful received additional credit under the CEP because it engaged in extensive and timely remedial measures, including: (i) engaging an external auditor to replace and/or train the compliance department and conduct an exhaustive review of policies

in place; (ii) implementing automatic freezing of funds based on transaction monitoring alerts, and adding multiple tools to assist with Know Your Customer and AML policies; (iii) removing all former management involved in the conduct underlying the offenses; (iv) working collaboratively with federal law enforcement to respond to law enforcement requests related to its transactional activity on issues relating to terrorist funding; and (v) transitioning operations outside of the U.S. and restricting all U.S. users to withdrawal-only functionality. *See* ECF No. 18 at 7. Accordingly, pursuant to the CEP, Paxful received a 25% reduction off the bottom of the applicable Guidelines fine range ($150,000,000), which results in a criminal fine of $112,500,000.[2] *See* ECF No. 18 at 7 & 26(b).

      b. <u>Paxful Established Inability to Pay Justifying Reduced Penalty Under Section 3572 and the Guidelines.</u>

Though Paxful has agreed that $112,500,000 is the appropriate criminal fine, considering all the considerations outlined in Paragraph 7 of the Plea Agreement, it has also asserted that it is unable to pay that amount based on its degraded financial position. *See* ECF No. 18 at 7(k). To meet its burden to establish its inability to pay the appropriate criminal fine, Paxful provided the government with both historical and projected cash flows from 2023 through 2025; balance sheets of assets and liabilities; and liquidity spreadsheets itemizing monthly revenue, values of current assets and investments, gross profits, expenses (including payroll for contractors, vendors, professional fees, and subscriptions), net operating income, liquid and illiquid cryptocurrency values, buffer balances, reserves against customer assets, and total liquid cash; financial statements from accounts held at financial institutions; independent auditor reports and analyses; reports relating to ongoing compliance remediation services contracted by the defendant; the asset purchase agreement relating to PXF Global and stock purchase agreements related to stockholder buyouts; information regarding settlements of legal claims, promissory notes, and tax liabilities; explanations of reserve requirements to protect the assets of customers who played no part in the criminal conduct, as well as policies related to fees assessed on U.S. customers maintaining funds in defendant wallets; and forecasts of commercial viability. These materials consistently showed that as of December 2024, Paxful had only 13 months of remaining operating capital. At the same time, it had

---

[2] The Plea Agreement applies the Sentencing Guideline to calculate the defendant's applicable fine range in paragraph 25. *See* ECF No. 18.

SENTENCING MEMORANDUM      5

negative revenue growth.[3]  Though no longer receiving income from trading, Paxful continued to incur costs associated with holding client funds for the purpose of withdrawal.[4]

The government reviewed the materials provided by the defendant and conducted an independent ability to pay analysis, considering a range of factors outlined in the Memo, including but not limited to: (i) the factors listed in 18 U.S.C. § 3572 and U.S.S.G. § 8C3.3(b); (ii) the defendant's current financial condition; and (iii) the defendant's alternative sources of capital.  Based on that independent analysis, the government determined that paying a total criminal penalty greater than $4,000,000 would substantially threaten the continued viability of the defendant, which would impact the company, its employees, and customers.  *See* ECF No. 18 at 7(l).  The government therefore agreed that the appropriate resolution in this case is a total criminal penalty of $4,000,000.  *See* ECF No. 18 at 26(b).  Both parties to the Plea Agreement concur that any higher penalty would make it impossible for Paxful to continue to ensure that customers are able to access their funds.

(*Continues onto next page.*)

---

[3] Paxful has continued to provide the government with periodic updated financial information, with the last update occurring in May 2025.  These updates show an unchanged financial picture, with operating costs outstripping revenues.

[4] During the December 9, 2025 hearing, the Court asked whether the potential dissolution of Paxful would have an impact on the plea.  The government has already taken this possibility into account and taken steps to ensure that Paxful will be able to fulfill the terms of the agreement.  Namely, the purchase agreement between Paxful and PXF Global requires PXF Global to assume, pay, perform, and discharge the liabilities relating to the government's investigation, and Paxful has consistently assured the government of its intention to ensure its obligations under the Plea Agreement are fulfilled.

SENTENCING MEMORANDUM                              6

IV. **CONCLUSION**

With this additional detail regarding the criminal penalty assessed by the United States, the United States respectfully requests that the Court impose the sentence set forth in the Plea Agreement.

Dated: January 29, 2026

ERIC GRANT
United States Attorney

By: /s/ MATTHEW THUESEN
MATTHEW THUESEN
Assistant United States Attorney


MARGARET A. MOESER
Chief, Money Laundering, Narcotics and
Forfeiture Section, Criminal Division
U.S. Department of Justice


/s/ KATHERINE NIELSEN
KATHERINE NIELSEN
KEVIN G. MOSLEY
EMILY COHEN
CAYLEE CAMPBELL
Trial Attorneys